**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JOSHUA STOCKTON                                                                    PLAINTIFF
ADC # 169885

v.                                             4:24CV00054-BRW-JTK

FELTS, et al.                                                                      DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

**I.   Introduction**

Joshua Stockton ("Plaintiff") is in custody at the Wrightsville Unit of the Arkansas Division of Correction ("ADC"). He filed pro se complaint pursuant to 42 U.S.C. § 1983 (Doc. Nos. 1, 4) and a Motion to Proceed in forma pauperis ("IFP Motion") pursuant to 28 U.S.C. § 1915(a) (Doc. No. 3), which the Court will grant by separate order. The Court must screen Plaintiff's claims pursuant to the Prison Litigation Reform Act ("PLRA") and in forma pauperis statute.

**II.   Screening**

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a

complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  See also 28 U.S.C. § 1915(e) (screening requirements).

An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).  Whether a plaintiff is represented by counsel or is appearing pro se, his complaint must allege specific facts sufficient to state a claim.  See Martin v. Sargent, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  Denton v. Hernandez, 504 U.S. 25, 32 (1992).

**III.   Discussion**

   **A.   Plaintiff's Amended Complaint[1]**

In his Amended Complaint, Plaintiff explains that he was transferred to the Wrightsville Unit on January 12, 2024.  (Doc. No. 4 at 9).  Since arriving at Wrightsville, the temperature in Plaintiff's living and sleeping area has been 40-45 degrees.  (Id.).  Plaintiff had only a shirt, pants, and canvas shoes; he was not given a blanket, thermals, sheets, socks, additional clothes, a

---

[1] Plaintiff filed a Complaint.  (Doc. No. 1).  Afterwards, he filed an Amended Complaint that was meant to replace his Complaint.  (Doc. No. 4 at 1).  Accordingly, the Court will look only to the allegations in Plaintiff's Amended Complaint.

2

winter coat or hat, or other hygiene items. (Id. at 9-10). He says he is being subjected to unlawfully cold temperatures, resulting in pain. (Id. at 9-12). Plaintiff also complains that he has a medical script for "no prolonged standing, stooping, walking, etc. for 0 hours." (Id. at 11). According to Plaintiff, the lines to receive medication are long. (Id.). Plaintiff is unable to stand in line to receive his prescriptions due to his medical conditions, in addition to the severe cold. (Doc. No. 4 at 11). As a result, Plaintiff has been unable to access his prescribed medications. (Id. at 11-13). Plaintiff makes multiple legal claims against multiple Defendants arising out of these, and other, factual allegations. (Id. at 4-24). The Court will not detail additional factual allegations because it is clear from the face of Plaintiff's Amended Complaint that he failed to exhaust his administrative remedies.

### B.    Failure to Exhaust Administrative Remedies

According to the Prison Litigation Reform Act ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place

there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)).

Plaintiff cannot proceed with this civil action because he has not exhausted his administrative remedies. Under the PLRA, the courts must dismiss an action that fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A. Exhaustion under the PLRA is mandatory. Jones v. Bock, 549 U.S. 199, 211 (2007). Failure to exhaust is an affirmative defense. But when it is apparent from the face of the complaint that a plaintiff has failed to exhaust his administrative remedies, the court may dismiss the pleading for failure to state a claim. Id. at 214-15 (a complaint may be subject to dismissal for failure to state a claim based on an affirmative defense when the affirmative defense is clear from the face of the complaint). Such is the case here.

Plaintiff identifies the applicable grievance procedure as AD 19-34. (Doc. No. 4 at 11). He asserts that "a 'no' in [the] determination of the grievance and/or emergency grievance . . . invalidates the grievance with no option of further to any other steps, making the grievance unavailable by AD 19-34 and established precedents." (Id.).

The Court takes judicial notice of policy AD 19-34 as described in a recent case:

> The relevant ADC exhaustion policy, ADC Administrative Directive 19-34 ("AD 19-34"), requires prisoners to raise their complaints through a three-step grievance procedure. First, the prisoner must file a "Step One" informal resolution within fifteen days of each incident to a designated "Problem Solver." The Step One informal resolution must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses." In other words, at Step One, the prisoner must name each defendant and explain their involvement in the complaint.
>
> Second, the prisoner must file a "Step Two" formal unit-level grievance, raising his complaint within three working days of the denial of the informal resolution. The Step Two grievance must contain "an explanation [of] why the inmate considers

4

the informal resolution unsuccessful." Notably, the prisoner may not raise new issues in his formal grievance, and issues not raised in Step One will not be considered at Step Two.

Finally, the prisoner must file a "Step Three" appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Step Two decision. At Step Three, the prisoner must "state a reason for the appeal." The grievance procedure cautions prisoners that they should "not list additional issues, requests, or names which were not part of the original grievance, as those issues will not be addressed."

In connection with each claim, the prisoner must: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." The ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at *all levels* of the grievance procedure ... their lawsuits or claims may be dismissed" under the PLRA.

Boyd v. Kerstein, No. 222CV00145BSMBBM, 2024 WL 250356, at *2 (E.D. Ark. Jan. 5, 2024), report and recommendation adopted, No. 222CV00145BSMBBM, 2024 WL 247082 (E.D. Ark. Jan. 23, 2024) (internal citations omitted). See also Arkansas Division of Correction Inmate Handbook, Inmate Grievance Procedure, p. 15, available at https://doc.arkansas.gov/correction/inmates/inmate-handbook/ (last accessed February 1, 2024). The Court may take judicial notice of the grievance policy because it is directly related to the issues here. Conforti v. United States, 74 F.3d 838, 840 (8th Cir. 1996).

Plaintiff apparently believed that the determination that a grievance was not an emergency grievance ended his obligation to proceed to the next steps in the grievance procedure. But Plaintiff's subjective beliefs about the grievance procedure are irrelevant. Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000). AD 19-34 makes no exception to the exhaustion requirement for

5

grievances that were determined not to be an emergency. As explained below, grievances that are determined not to be an emergency grievance are simply Step One grievances.

The grievance form reads, in relevant part, "This form was received on ___ (date), and determined to be Step One and/or an Emergency Grievance ___ (yes/no)." (Doc. No. 4 at 32). Pursuant to that language, the grievance could be (1) a Step One and an Emergency Grievance; or (2) a Step One or an Emergency Grievance. On Plaintiff's grievances, the response in the blank was "no." (Id. at 11, 12, 16, 17, 30, 31, 32, 33, and 36). That means Plaintiff's grievances were simply Step One grievances and had to proceed to Step Two and through an appeal to be exhausted.

There are other allegations in Plaintiff's Amended Complaint in connection with which he did not discuss exhaustion. Regardless, Plaintiff identified the relevant grievance procedure as AD 19-34. The alleged wrongdoing in his Amended Complaint began at the earliest on January 12, 2024. Based on the timeline alone, it is not possible for Plaintiff to have exhausted his claims before he filed his Complaint on January 22, 2024 or his Amended Complaint on January 31, 2024.

Plaintiff did not receive a decision on appeal on the merits of his claims in this case; the ADC never reached the merits of any appeal. As a result, Plaintiff did not exhaust his administrative remedies. Plaintiff's claims should be dismissed for this reason.

## IV.   Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's claims be DISMISSED without prejudice for failure to exhaust administrative remedies;

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 1st day of February, 2024.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE